IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CRYSTAL M. HANN                                                                          PLAINTIFF

v.                      Civil No. 10-2130

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Crystal M. Hann, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for child supplemental security income ("SSI") benefits under Title XVI of the Social Security Act (the "Act").

**Procedural Background:**

Plaintiff protectively filed her SSI application on August 17, 2005, alleging disability due to scoliosis, headaches, and depression. Tr. 19, 46, 53, 82, 136, 145, 159-160. At the time of filing, Plaintiff was fifteen years old, an adolescent under the Act. Tr. 22.

Plaintiff's claim was denied initially and on reconsideration. Tr. 46-49, 53-55. An administrative hearing was held on August 31, 2007. Tr. 399-429. Plaintiff was present at the hearing and represented by council. Tr. 399-429. The Administrative Law Judge ("ALJ"), in a written decision dated April 25, 2008, found that: (1) Plaintiff had not engaged in substantial gainful activity during the relevant time period; (2) Plaintiff suffers from scoliosis, status-postoperative, headaches, and depression, which constitute severe impairments; (3) although Plaintiff's impairments are severe, they do not meet or medically equal a listed impairment; and (4) Plaintiff does not have

AO72A
(Rev. 8/82)

extreme or marked limitations in any domain of functioning, and as such, does not have an impairment(s) that functionally equals a listing. Tr. 16-32. Accordingly, the ALJ concluded Plaintiff was not disabled from August 17, 2005, the application date, through April 25, 2008, the date of the ALJ's decision. Tr. 16-32.

On July 3, 2010, the Appeals Council denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner. Tr. 3-10. Plaintiff now seeks judicial review of that decision.

**Factual Background:**

**I.      Scoliosis**

Plaintiff has a history of chronic back pain associated with progressive adolescent idiopathic scoliosis, which worsened following a pelvic fracture sustained in June 2003. Tr. 173-200, 228-250, 257. In February 2004, Plaintiff underwent posterior spinal fusion and rod placement without complication. Tr. 228-250. Prior to surgery, Plaintiff had a right thoracic curve from T7-11 of 55 degrees and a left curve from T12-L4 of 45 degrees. Tr. 231-232, 241-242.

Following her spinal surgery, Plaintiff went to the emergency room at Cooper Clinic on several occasions for pain and numbness in her hips, groin area, and thighs. Tr. 189-190, 210-227. X-rays revealed a 20 degree residual curve in the thoracic and thoracolumbar regions with no complications noted. Tr. 227. A lumbar CT scan revealed normal positioning of hardware without encroachment into the spinal canal or near any major vascular structures. Tr. 222-223. R. Dale Blasier, M.D., Plaintiff's orthopedist, released her to return to school. Tr. 225.

In August 2004, six months post surgery, Plaintiff presented to Children's Hospital with complaints of numbness along the right thigh. Tr. 200-202. On examination, Plaintiff had an

excellent gait, excellent range of motion with full flexion and extension of the spine and side to side bending. Tr. 200. Her lower extremity examination was within normal limits, except for some numbness along the anterior thigh on the right side. Tr. 200. Plaintiff was neurovascularly intact elsewhere with good strength and normal reflexes. Tr. 200. X-rays revealed well-placed hardware with well-maintained correction. Tr. 200. Although Plaintiff's mother described her activities as extremely limited, Plaintiff reported that she was able to ride horses over the summer with no problems whatsoever. Tr. 200. David Wassell, M.D., cleared Plaintiff for any and all physical activities, noting that her only limitation was when she chose to limit herself. Tr. 200.

A nerve conduction study was performed at University of Arkansas for Medical Sciences ("UAMS") on September 27, 2004. Tr. 254-255. Results showed mild slowing of the right femoral cutaneous sensory neuropathy with a normal amplitude, suggesting mild demyelination in the right femoral cutaneous nerve without evidence of axonal loss. Tr. 254. Plaintiff's neurologist gave a good prognosis for recovery. Tr. 254.

On November 12, 2004, Plaintiff saw Rick W. Harrison, M.D., for a physical examination. Tr. 251-265, 305-306. Plaintiff presented with complaints of chronic back pain and numbness in her legs. Tr. 251. X-rays of Plaintiff's spine revealed thoracolumbar scoliosis with a lumbar curvature of 37 degrees, a dorsal curvature of 25 degrees, and rod placement. Tr. 258. On examination, Dr. Harrison stated Plaintiff could not really bend over, but she did have obvious scoliosis. Tr. 252. Passive range of motion was within normal limits in all bones and joints tested. Tr. 252. Plaintiff was neurologically intact. Tr. 252. Deep tendon reflexes were 1+ and symmetric at the biceps and negative at the triceps, patella, and Achilles. Tr. 252. No muscle weakness, atrophy, or sensory abnormalities were noted. Tr. 252. Gait and coordination were normal and Plaintiff was able to

heel-toe walk and squat and rise from a squatting position. Tr. 252, 263. Dr. Harrison noted that Plaintiff had a flat affect, suggesting possible depression. Tr. 252. He found that Plaintiff's ability to engage in age appropriate activities of daily living was somewhat restricted, although he was unsure whether the limitation was psychological or organic in nature. Tr. 252, 265. He further noted that Plaintiff had a normal ability to perform daily activities in the office. Tr. 252.

In early 2005, Plaintiff saw Richard McCarthy, M.D., for back, knee, and hip pain and numbness. Tr. 388-393. Dr. McCarthy noted marked improvement in Plaintiff's spinal curves and spinal balance postoperatively. Tr. 392-393. A bone scan revealed a solid fusion mass. Tr. 391. Dr. McCarthy found that Plaintiff's poor nutrition coupled with nicotine exposure from her parents put her at high risk for development of pseudoarthrosis, which could be the cause of her back pain. Tr. 393. He also noted that Plaintiff's numbness in the lateral femoral cutaneous nerve would gradually improve over time and was due "purely to positioning at the time of surgery." Tr. 393. He recommended increased stretching and back strengthening exercises, proper diet, and avoidance of secondhand smoke. Tr. 391-393.

Due to residual back pain, Plaintiff had her surgical rod implants removed in August 2005. Tr. 272-278. Following surgery, Plaintiff stated she was doing much better. Tr. 296. In October 2005, Plaintiff's mother reported that Plaintiff had returned to a "normal state of affairs" and could participate in any activity. Tr. 385. X-rays showed good alignment, good balance, and solid fusion. Tr. 385.

At the initial determination level, S.A. Whaley, M.D., an agency physician, reviewed Plaintiff's medical records and determined that her impairments did not meet, medically equal, or functionally equal a listing. Tr. 319-323. He found no limitation in the domains of acquiring and

using information, attending and completing tasks, interacting and relating with others, and caring for yourself, and less than marked limitation in the domains of moving about and manipulating objects and health and physical well-being. Tr. 321-322.

At the reconsideration level, S. Manley, M.D., an agency physician, determined that Plaintiff had no limitation in the domains of acquiring and using information, attending and completing tasks, and caring for yourself, and less than marked limitation in the domains of interacting and relating with others, moving about and manipulating objects, and health and physical well-being. Tr. 324-329. Dr. Whaley noted the following: (1) despite being placed on depression medication, Plaintiff was never referred for mental health treatment; (2) the medical evidence of record does not indicate any further back pain following rod removal surgery in August 2005; and (3) Plaintiff's reported headaches only lasted one hour and either resolved spontaneously or with Tylenol. Tr. 326-327.

In September 2006, Plaintiff presented to Johnson Regional Medical Center with complaints of right hip, back, and knee pain. Tr. 338-346. She was reportedly having trouble with her gait and was wearing a knee brace. Tr. 339. On examination, Plaintiff had no edema of the knee and no point tenderness. Tr. 339. X-rays of Plaintiff's knee and hips were negative. Tr. 339-340. Joseph C. Kradel, M.D., prescribed Tylenol with codeine and ibuprofen for pain. Tr. 330.

On March 19, 2007, Plaintiff was admitted to Children's Hospital for iliac crest bone grafting and re-instrumentation of the posterior spine with repair of pseudoarthrosis at levels T8-9, T11-12, and L3-4, which she tolerated well. Tr. 348-366, 370-372, 383-384. Following surgery, Plaintiff was neurovascularly intact to motor strength and sensation in her back and lower extremities. Tr. 371. She was discharged on March 22, 2007, with arrangements for home physical therapy. Tr. 371.

Dr. McCarthy released Plaintiff to return to school "as tolerated" on April 2, 2007. Tr. 395. He noted that Plaintiff might not be able to complete a whole day. Tr. 395.

Following her surgery, Plaintiff saw Dr. McCarthy for routine check-up appointments. Tr. 380-397. In April 2007, Plaintiff's pain was less and she was able to bend forward and backward without difficulty. Tr. 380. X-ray imaging showed good alignment and treatment of the pseudoarthrosis. Tr. 380, 382. There was some residual scoliotic curvature. 381. Plaintiff's mother complained of leg inequality, but Dr. McCarthy found no evidence of leg length disparity. Tr. 381. Dr. McCarthy noted that Plaintiff was "doing fine" and was in the early phases of recovery. Tr. 382. He encouraged Plaintiff to continue walking. Tr. 382.

On July 25, 2007, four months post-surgery, Plaintiff reported that she had returned to work on a part-time basis and was sweeping and doing other activities. Tr. 397. Dr. McCarthy noted that Plaintiff was "really significantly better than she has been in the past." Tr. 397. On examination, Plaintiff had a reasonable range of motion. Tr. 397. X-rays revealed intact instrumentation and evidence of early healing. Tr. 397. Dr. McCarthy told Plaintiff she could continue with her activities. Tr. 397. In August 2007, however, Dr. McCarthy completed a note stating that Plaintiff could not return to work until October 31, 2007. Tr. 394.

In a letter dated August 30, 2007, Mark Siebenmorgen, Plaintiff's high school principal, reported that Plaintiff had missed several weeks of school due to her recent back surgery and had become a homebound student at the end of the 2006-2007 school year. Tr. 167. However, at the time of the administrative hearing, Plaintiff testified that she had returned to school on a full-time basis. Tr. 415.

**II.      Headaches and Depression**

Plaintiff also has a history of depression and headaches. In March and April 2006, Plaintiff saw Bobby Noonan, M.D., for migraine headaches. Tr. 315-318. Plaintiff reported severe, progressive headaches for the past two or three months. Tr. 315. Dr. Noonan noted that Plaintiff appeared mildly depressed. Tr. 315. He gave Plaintiff a prescription for Prozac for depression and Maxalt for complex tension-type migraine headaches. Tr. 316. MRIs of Plaintiff's brain, performed on May 3, 2005, and April 6, 2006, were normal. Tr. 346. In December 2006, Plaintiff returned for treatment of depression and migraines. Tr. 377. Plaintiff stated that her migraines had improved, but she still experienced headaches about once every week to two weeks. Tr. 377. Dr. Noonan noted that Plaintiff had not been taking her antidepressant medication faithfully. Tr. 377-378. He prescribed Midrin for headaches, Zoloft for depression, and referred Plaintiff for family counseling. Tr. 378.

At a follow-up appointment with Dr. Noonan, Plaintiff reported continual depression. Tr. 370, 373. Dr. Noonan discussed different methods of dealing with depression, including exercise, diet, and maintaining social contact. Tr. 373. He also noted that Plaintiff had not remained compliant with her medication. Tr. 375, 377.

**Applicable Law:**

The court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether

AO72A
(Rev. 8/82)

evidence is substantial, the court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be disabled under the Act, a child must prove that she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations," and which has lasted or can be expected to last for at least twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906. In determining whether a claimant under the age of eighteen is disabled, the ALJ undertakes a sequential three-step evaluation. *Moore ex rel. Moore v. Barnhart*, 413 F.3d 718 (8th Cir. 2005); 20 C.F.R. § 416.924(a). The ALJ first determines whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is so engaged, she will not be awarded SSI benefits. *Id.* At the second step, the ALJ determines whether the child has an impairment or combination of impairments that is "severe." 20 C.F.R. § 416.924(c). To be deemed severe, an impairment must be more than "a slight abnormality . . . that causes no more than minimal functional limitations." *Id.* At the final step, the ALJ determines whether the child has an impairment or impairments that meet, medically equal, or functionally equal a listed impairment. 20 C.F.R. § 416.924(d).

The claimant has the burden of showing that his impairment meets or equals a listing. *Jackson v. Astrue*, 314 Fed. Appx. 894, 895 (8th Cir. 2008) (citing *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)). To meet a listing, an impairment must meet all the specified criteria.

AO72A
(Rev. 8/82)

*Id.* A child's impairment medically equals a listed impairment if it "is at least equal in severity and duration to the medical criteria of the listed impairment." 20 C.F.R. § 416.926(a); *Neal ex rel. Walker v. Barnhart*, 405 F.3d 685, 689 (8th Cir. 2005). Even if a child's impairments do not meet a listing, he will be awarded benefits if his impairments "functionally" equal a listed impairment. 20 C.F.R. § 416.926a(a). To determine whether an impairment functionally equals a disability included in the Listings, the ALJ must assess the child's developmental capacity in six specified domains. 20 C.F.R. § 416.926a(b)(1). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1); *see also Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 722 n. 4 (8th Cir. 2005). To functionally equal a listing, an impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

A marked limitation is an impairment that seriously interferes with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). It is "more than moderate" but "less than extreme." *Id.* An extreme limitation is defined as "more than marked," and exists when a child's impairment(s) interferes very seriously with his ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). Day-to-day functioning may be very seriously limited when an impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. *Id.*

In determining the degree of limitation in each of the six domains, the ALJ is required to analyze the child's subjective complaints in accordance with the seven factors from 20 C.F.R. § 416.929(c). Specifically, the ALJ must consider these factors: (1) the child's daily activities; (2) the

AO72A
(Rev. 8/82)

location, duration, frequency, and intensity of the child's pain or other symptoms; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of the child's medication; (5) treatment, other than medication, that the child receives or has received for relief of pain or other symptoms; (6) any measures the child uses or has used to relieve his or her pain or other symptoms; and (7) other factors concerning the child's functional limitations or restrictions due to pain or other symptoms. *See* 20 C.F.R. § 416.929(c)(3); *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984. The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines those factors prior to discounting the subjective complaints regarding the child's functional limitations. *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000).

**Discussion:**

Plaintiff contends the Commissioner's decision is not supported by substantial evidence. Specifically, Plaintiff raises the following issues: (1) whether the ALJ properly considered all of her combined impairments in his functional equivalency determination; and (2) whether the ALJ improperly dismissed her subjective complaints of pain. *See* Pl.'s Br. 17-21.

**I. Functional Equivalency**

Plaintiff argues that the ALJ failed to consider all of her combined impairments in his functional equivalency analysis. *See* Pl.'s Br. 17-20. The court disagrees. The ALJ found that Plaintiff had severe impairments related to scoliosis (postoperative), headaches, and depression. Tr. 22. However, he found that Plaintiff's impairments did not meet, medically equal, or functionally equal a listed impairment, as he found no limitation in the domains of acquiring and using information, attending and completing tasks, and caring for yourself, and less than marked limitation in the domains of interacting and relating with others, moving about and manipulating objects, and

health and physical well-being. Tr. 27-32. The ALJ gave a thorough overview of Plaintiff's medical records and expressly stated that he considered Plaintiff's "combination of impairments" in making his determination. Tr. 23. As such, Plaintiff's argument is without merit.

### A. Acquiring and Using Information

This domain considers how well a claimant acquires or learns information, and how well she uses the information learned. 20 C.F.R. § 416.926a(g). Plaintiff's mother made no allegation of limitation in this domain, and Plaintiff testified at the hearing that she has no trouble keeping up in school or completing her homework. Tr. 100, 116, 157, 422. As such, the record supports the ALJ's conclusion that Plaintiff has no limitation in the domain of acquiring and using information.

### B. Attending and Completing Tasks

This domain considers how well a child is able to focus and maintain attention, and how well she is able to begin, carry through, and finish activities, including the pace at which she performs activities and the ease of changing activities. 20 C.F.R. 416.926a(h). In child function reports, Plaintiff's mother listed "no impairment" in the area of attention and concentration. Tr. 103, 119, 131, 158. Additionally, although Plaintiff reported having trouble sitting still and concentrating at school, she also testified that she was able to complete her homework and assignments without difficulty. Tr. 422. In September 2004, Becky Hern, the school nurse, found that Plaintiff had no difficulty with concentration, persistence, or pace. Tr. 131. For these reasons, substantial evidence supports the ALJ's determination that Plaintiff has no limitation in this domain of functioning.

### C. Interacting and Relating with Others

In assessing a claimant's limitations in the domain of interacting and relating with others, the ALJ considers how well the child initiates and sustains emotional connections with others, develops

and uses the language of the community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i); *Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 654 (8th Cir. 2004). The ALJ found that Plaintiff has less than marked limitation in the domain of interacting and relating with others. Tr. 28-29.

Plaintiff has a history of depression, for which she was prescribed Zoloft and Prozac. Tr. 315-318, 370, 373, 377-378. In December 2006, Plaintiff complained that her antidepressants were not effective, but admitted that she had not taken her medication faithfully. Tr. 377-378. Dr. Noonan counseled Plaintiff on proper diet, exercise, and maintaining social contact. Tr. 373, 378. He also prescribed Prozac and referred Plaintiff for family counseling. Tr. 373, 378. There is no evidence that Plaintiff complied with Dr. Noonan's suggestions or received any formal mental health treatment. Tr. 378.

In child function reports, Plaintiff's mother noted that Plaintiff's impairment did not affect her social activities or behavior, except she could no longer play group sports. Tr. 101, 117, 156. At the hearing, Plaintiff testified that her friends visited her at home and she went to a movie a few weeks prior to the hearing. Tr. 420.

Although Plaintiff suffers from depression, she maintains close friendships and has exhibited no behavioral problems at home or at school. Furthermore, she did not seek formal mental health treatment or take her medications as prescribed. For these reasons, the overall evidence of record supports the ALJ's determination that Plaintiff has less than marked limitation in this domain.

   D.  Moving About and Manipulating Objects

This domain considers how well a child is able to move her body from one place to another and how a child moves and manipulates objects. 20 C.F.R. § 416.926a(j). The ALJ found that

Plaintiff has less than marked limitation in the domain of moving about and manipulating objects. Tr. 29-30.

Plaintiff has undergone three surgeries on her back. Tr. 228-250, 272-278, 348-366. At the administrative hearing, Plaintiff testified that she could not attend regular physical education classes and participate in group sports. Tr. 423-424. She wrote sports reports and walked younger children across the street to earn her physical education credits. Tr. 423-424. She was temporarily home schooled following her surgeries, but later returned to school full-time. Tr. 416. She worked part-time as a cashier in July 2007. Tr. 426-427.

Although Plaintiff undoubtedly has limitations in this area of functioning, the evidence of record demonstrates that her symptoms improved over time. Six months after her first surgery, Plaintiff reported being able to ride horses with "no problems whatsoever." Tr. 200. Additionally, although Plaintiff experienced some initial numbness in her hips and legs, an EMG study showed only mild slowing of the right femoral cutaneous nerve, with no axonal loss, and Dr. McCarthy noted that Plaintiff's numbness was due to surgical positioning and would gradually improve with time. Tr. 254, 393. Following Plaintiff's rod removal surgery, her mother reported that she had returned to a "normal state of affairs" and could participate in any activity, including barrel racing. Tr. 296, 385, 427. X-rays showed good alignment, balance, and solid fusion. Tr. 385.

After developing progressive knee and hip pain, Plaintiff underwent surgery to repair pseudoarthrosis at three levels. Tr. 348-366. The surgery was successful, and Plaintiff was released to school "as tolerated" on April 2, 2007. Tr. 395. In April 2007, Plaintiff reported that her pain was less and she was able to bend forward and backward without difficulty. Tr. 380. X-rays showed good alignment and treatment of the pseudoarthrosis. Tr. 380, 382. Dr. McCarthy noted that

Plaintiff was "doing fine" and encouraged her to continue walking. Tr. 382. In July 2007, Plaintiff was working part-time and was doing other activities, including sweeping. Tr. 397. Dr. McCarthy noted that Plaintiff was "really significantly better than she has been in the past." Tr. 397. On examination, she had reasonable range of motion. Tr. 397. Dr. McCarthy allowed Plaintiff to continue with her activities, but later completed a note releasing her from work until October 31, 2007. Tr. 394. However, this restriction was temporary and there is no indication that Plaintiff was restricted from activity beyond this date. For these reasons, substantial evidence supports the ALJ's determination that Plaintiff has less than marked limitation in the domain of moving about and manipulating objects.

    E.  <u>Caring for Yourself</u>

This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies her physical and emotional wants and needs in appropriate ways, how well the child copes with stress and changes in the environment, and whether the child takes care of his own health, possessions, and living area. 20 C.F.R. § 416.926a(k). The ALJ found that Plaintiff has no limitation in this domain of functioning. Tr. 30-31.

In her initial child function reports, Plaintiff's mother indicated that Plaintiff had no trouble taking care of her personal needs, including taking care of hygiene, cooking a meal, taking her medication, and asking for help when needed, but she did not wash or put away her clothes or help out around the house. Tr. 102, 118, 156-157. There are no other allegations of limitation in this domain. As such, the court concludes that substantial evidence supports the ALJ's determination that Plaintiff has no limitations with regard to caring for herself.

### F. Health and Physical Well-Being

This domain considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects. 20 C.F.R. 416.929a(l). The ALJ found that Plaintiff has less than marked limitation in the domain of health and physical well-being. Tr. 31-32.

Plaintiff testified that she takes her pain medication at night because it causes drowsiness. Tr. 418-419. She also has a history of headaches, for which Dr. Noonan prescribed Maxalt and Midrin. Tr. 316, 378. In December 2006, Plaintiff reported that her migraines had improved and she was only experiencing them once every week to two weeks. Tr. 377-378. Plaintiff's headaches are presumably controlled with medication, as there are no further migraine complaints contained in the record.

After reviewing the transcript, the court finds that substantial evidence supports the ALJ's determination that Plaintiff has less than marked limitation in the domain of health and physical well-being.

## II.    Subjective Complaints

Plaintiff contends the ALJ made an insufficient credibility determination. *See* Pl.'s Br. 18-20. The court disagrees. When evaluating a claimant's subjective allegations of pain, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely

AO72A
(Rev. 8/82)

because the objective medical evidence does not fully support them." *Medhaug v.* Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.* A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)).[1] In discounting Plaintiff's subjective complaints, the ALJ noted an overall improvement in Plaintiff's symptoms with surgery, medication, and physical therapy. Tr. 25; *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) ("impairments that are controllable or amenable to treatment do not support a finding of total disability"). After her second surgery, Plaintiff had returned to a "normal state of affairs" and could participate in any activity. Tr. 385. X-rays showed good alignment, good balance, and solid fusion. Tr. 385. Following her third surgery, Dr. McCarthy noted that Plaintiff was "doing fine" and was "really significantly better than she has been in the past." Tr. 397. In August 2007, Dr. McCarthy wrote a note restricting Plaintiff from work until October 31, 2007, so she could fully heal. Tr. 394. However, there are no further records from Dr. McCarthy indicating that these restrictions were more than temporary in nature.

---

[1] Plaintiff argues that the ALJ failed to reference *Polaski* in his opinion. *See* Pl.'s Br. 19. This argument has no merit. The ALJ fully discussed and considered Plaintiff's symptoms in accordance with 20 C.F.R. § 416.929 and SSR 96-7p, which encompass the *Polaski* factors.

The medical evidence also supports the ALJ's conclusion that Plaintiff's headaches improved with the use of medication. Tr. 26, 377. In December 2006, Plaintiff reported that her migraines had improved and she was only experiencing headaches once every week to two weeks. Tr. 377; *Medhaug*, 578 F.3d at 816 (an impairment is not considered disabling if it is adequately controlled with medication).

The ALJ further noted that Plaintiff's failure to seek mental health treatment was inconsistent with her allegations of disabling depression. Tr. 26; *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (claimant failed to maintain a consistent treatment pattern for her alleged mental impairments). Dr. Noonan referred Plaintiff for family therapy, but there is no evidence that she ever sought professional mental health treatment. Tr. 378. Moreover, Dr. Noonan consistently noted that Plaintiff was noncompliant with her depression medication, and, unlike the circumstances in *Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009), there is no evidence that Plaintiff's noncompliance was a result of her mental illness. Tr. 377-378; *see Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (claimant's failure to take her depression medication was unjustified when there was no evidence that her noncompliance was a manifestation of her mental illness).

With regard to activities of daily living, the ALJ noted that Plaintiff rode horses, participated in barrel racing, and worked on a part-time basis during the period for which she claimed disability. Tr. 25-26, 200, 385, 397; *Halverson v. Astrue*, 600 F.3d 922, 928 (8th Cir. 2010) (claimant's allegations of employment-related difficulties were inconsistent with her ability to travel, visit friends, go shopping, and care for her activities of daily living). Finally, the objective evidence of record simply does not support the alleged severity of Plaintiff's impairments. *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (absence of objective medical evidence to support claimant's

complaints). Contrary to Plaintiff's blanket assertion that she is unable to participate in any activities, multiple progress notes reveal that her symptoms were continually improving. Tr. 200, 296, 382, 397.

Plaintiff's medical history, reported activities, and her improvement with treatment and medication cast doubt on the validity of her testimony. Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted her subjective complaints. *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("we defer to an ALJ's credibility determinations if they are supported by valid reasons and substantial evidence"). For these reasons, substantial evidence supports the ALJ's decision to discredit Plaintiff's subjective complaints.

**Conclusion:**

Based on the forgoing, then undersigned finds that there is substantial evidence to support the ALJ's determinations at all three steps of the sequential analysis. Accordingly, Plaintiff's complaint is dismissed with prejudice.

DATED this 2nd day of September 2011.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)